IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTRON RUSSELL**, | : | CIVIL ACTION NO. 1:13-CV-2601 |
| | : | |
| Petitioner | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **FEDERAL BUREAU OF PRISONS**, | : | |
| | : | |
| Respondent | : | |

### MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Antron Russell ("Russell"), a federal inmate formerly incarcerated at the United States Penitentiary at Canaan ("USP-Canaan") in Waymart, Pennsylvania. He contends that his due process rights were violated in the context of a disciplinary hearing. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.   Background**

In an incident report dated April 21, 2013, Russell was charged with two violations of the Prohibited Acts Code, Indecent Exposure, Code 300, and Insolence towards a Staff Member, Code 312. See 28 C.F.R. § 541.13; (Doc. 9-1, at 19). The incident is described by the reporting officer as follows: "On April 21, 2013 at approximately 10:15 PM I started my Safety and security checks and Inmate Russell #05368-070 was yelling and calling me a "FAT BITCH" and when I got to his cell door (226) he was standing with his Erect penis out of his pants in his hand smirking at me." (Id.)   Thereafter, the incident report was suspended pending re-

write. (Id. at 17). On April 28, 2013, it was revised "with minor amelioration." (Id. at 13, 16). Notice of the incident report was provided to Russell on April 29, 2013. (Id. at 16). The Unit Disciplinary Committee ("UDC") review took place on May 1, 2013, at which time Russell proclaimed "I'm not guilty." (Id. at 13, 16).

The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") on May 1, 2013, based on the severity of the charge. (Id.) After being advised of the rights associated with the process, Russell indicated that he wanted staff member Dr. Dunston to represent him at the hearing and requested that his cell mate, Jason Shepard, be called as a witness. (Doc. 1, at 2; Doc. 9-1, at 22). He was also advised of his "Inmate Rights at Discipline Hearing." (Id.; Id. at 23).

The hearing commenced on May 7, 2013. (Doc. 9-1, at 12). Russell stated "She states she started at cell 100 and heard me from cell 226. I never had any interaction with that woman. We never had no conversation. She just flashed her light and kept walking." (Id.) Russell's cellmate testified that "It never happened. We was watching the basketball game. After we laid down. I was on the top bunk. He [Russell] was sitting in the chair. We was watching Sports Center." "She [reporting staff member] did a regular walk-around." (Id.) The only documentary evidence submitted was the incident report. (Id.)

Based on the evidence presented at the hearing, the DHO found that petitioner committed the act as charged. (Doc. 9-1, at 12). In arriving at this conclusion, he stated the following:

> The DHO finds based on the greater weight of the evidence that on April 21, 2013, at approximately 10:15 PM, while the reporting staff member was conducting the safety and security check in the C-2 Housing Unit, RUSSELL was yelling and called the reporting staff member a "Fat Bitch", and observed him standing at this cell door with his penis out of pants in his hand.
>
> Specific evidence relied on to support this finding is the eyewitness account of the reporting staff member, as reflected in the incident report.
> . . .
>
> The DHO considered and affords little weight to RUSSELL's plea . . . The DHO also considered witness testimony of SHEPARD, JASON which buttresses [Russell's] description of the incident. The DHO finds his plea fails to exculpate him of the charge.
>
> RUSSELL disputes calling the reporting staff member a "Fat Bitch", denied his penis was exposed, and averred he "never had interaction with that woman", and "never had no conversation." In this the DHO will afford greater weight to the reporting staff member as she derives no known benefit by providing false information and has a legal obligation to present accurate and factual information.

(Id. at 13).

In sanctioning him with thirty days of disciplinary segregation, disallowance of twenty-six days of good conduct time, impounding of property for ten months (except religious and legal materials), loss of Trulincs[1] and telephone privileges for ten months and a suspended monetary fine, the DHO reasoned as follows: "Actions of this nature are considered predaceous, menacing, and extremely offensive. The

---

[1] Trulincs is the Federal Bureau of Prison's prisoner electronic communications service. http://www.bop.gov/inmates/trulincs.jsp

3

sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior.  The DHO will note for the record that this inmate presents an extensive disciplinary history to include prior infractions for interfering with count, phone abuse, being [in] an unauthorized area, being absent from assignment, as well as demonstrates a continued inability to abide by institution rule.  Chronic misconduct is corrosive towards correctional objectives and cannot be tolerated." (Doc. 9-1, at 14).

After exhausting all available administrative avenues of review, petitioner filed the instant petition arguing that his due process rights were violated because he was not provided with a copy of the incident report within twenty-four hours of staff becoming aware of the incident, the DHO hearing was held on the same day he received his copy of the incident report, and the DHO failed to review video evidence.  (Doc. 1, at 2-3).

## II.   Discussion

### A.   Mootness

A recent search of the Federal Bureau of Prison's Inmate Locator Service revealed that Russell was released from custody on May 19, 2014.  See http://www.bop.gov/inmateloc/.  His release renders the petition moot because it is not redressable by a favorable judicial decision.  Good time credits affect the timing of an inmate's conditional release from prison, but they do not alter the sentence itself.  Thus, once Russell was released upon completion of service of his sentence, his good time credits ceased to have any effect and his petition seeking restoration

of good time credit was rendered moot.  See 28 C.F.R. §§ 2.35(b ), § 523.2(c); see also, Scott v. Schuykill FCI, 298 F. App'x 202, 204 (3d Cir. 2008) (*per curiam*).

**B.     Merits**

Had the petition not been rendered moot, it would be subject to denial on the merits.  His claim that his due process rights were violated in the context of the disciplinary hearing process, and that this violation resulted in a loss of good conduct time, is properly the subject of a habeas petition because it directly impacts the duration of confinement.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a DHO hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied

on and reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-572.  It is clear from the record that Russell was afforded all of these protections.  His petition therefore lacks merit.

## III.    Conclusion

    Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

                        /S/ CHRISTOPHER C. CONNER
                        Christopher C. Conner, Chief Judge
                        United States District Court
                        Middle District of Pennsylvania

Dated:       May 29, 2014